UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

TODD A. DYER,

        Defendant.

Case No. 16-cr-100-pp

**ORDER DENYING DEFENDANT'S MOTION REQUESTING COPIES OF CJA 20 VOUCHERS (DKT. NO. 93); DENYING POST-CONVICTION REQUEST FOR GRAND JURY TRANSCRIPTS (DKT. NO. 94); AND ADDRESSING DEFENDANT'S LETTER REQUEST THAT THIS COURT "SUPPORT ITS CLAIM" (DKT. NO. 95)**

On December 7, 2016—over five years ago—the defendant signed a plea agreement. Dkt. No. 30. On March 23, 2017, at the beginning of his sentencing hearing, the defendant attempted to withdraw his guilty plea, telling the court that he had pled guilty because he did not believe he was getting a fair trial in a different case in front of a different judge and he believed that pleading guilty in that case and this one was the only way to avoid that situation. Dkt. No. 47. The court did not allow the defendant to withdraw his guilty plea. Id. at 1-2; Dkt. No. 57. The court sentenced the defendant, dkt. nos. 47, 48, and the defendant appealed his conviction and sentence to the Seventh Circuit Court of Appeals, dkt. no. 50. On August 31, 2018, the Seventh Circuit affirmed the conviction and sentence. Dkt. No. 68. On May 21, 2019, the defendant filed a petition to vacate, correct or set aside the conviction and sentence under 28

1

U.S.C. §2255. Dkt. No. 75. The court now has denied that motion. Dyer v. United States, Case No. 19-cv-752-pp (E.D. Wis.).

Since his March 2017 sentencing hearing, the defendant has continued to file letters, motions and other documents in this *closed* criminal case. Since filing his §2255 petition in May 2019, he has filed thirteen letters and motions in this *closed* criminal case. On February 5, 2021, the court issued an order describing some of these letters and motions. Dkt. No. 91. The order stated:

> That leaves a series of letters in which the defendant makes various allegations regarding the validity of the grand jury that indicted his cases. Dkt. Nos. 82, 85, 86, 89. On one of these letters, the defendant put only the case number for this criminal case—Case No. 16-cr-100. Dkt. No. 82. On others, he put the case number for this case, the criminal case that was (when it was open) assigned to Judge Stadtmueller ([Case] No. 15-cr-115) and the civil case filed by the government ([Case] No. 19-cv-1319). See, *e.g.*, Dkt. Nos. 85, 86, 88, 90. On still others, he put the case numbers for the two criminal cases ([Case] Nos. 16-cr-100, 15-cr-115). See, *e.g.*, Dkt. No. 87, 89.
>
> The court will not take action on the letters the defendant has filed in this criminal case—Case No. 16-cr-100—for several reasons. First, this criminal case is closed. The defendant has been sentenced, has filed a direct appeal to the Seventh Circuit and the Seventh Circuit has affirmed the conviction. Under 18 U.S.C. §3582(c)(1), a court "may not modify a term of imprisonment once it has been imposed" unless the Bureau of Prisons or a court grants compassionate release or the Guidelines under which the defendant was sentenced are reduced after sentencing. So at this point—almost four years after the court sentenced the defendant and two and a half years after his conviction was affirmed on appeal—the court has no authority to modify the sentence it imposed in this case.
>
> Second, the defendant has a pending motion to vacate his conviction under 28 U.S.C. §2255, in which the defendant has raised an ineffective assistance of counsel claim based on his allegation that his counsel failed to object to the timing of the court's ruling on a report and recommendation. Case No. 19-cv-752. If the defendant has information he wishes the court to consider in *that*

2

> case, he must file that information in *that* case, not this closed criminal case.
>
> Third, there is a pending civil case against the defendant, Case No. 19-cv-1319. The defendant has a lawyer in that case. Any pleadings he files that relate to that case should be filed in that case, and should come from his attorney, who is his representative in that case.
>
> There is no other procedural mechanism that authorizes this court to rule on the defendant's letters/concerns about his conviction, which is final. The defendant must constrain his attacks on this criminal conviction to his §2255 case, Case No. 19-cv-752.

Id. at 3-5.

Despite this order, the defendant since has filed three documents in this *closed* criminal case. The court received the first on May 5, 2021—three months after the court issued the above-described order. Dkt. No. 93. The defendant put both the case number for this *closed* criminal case—Case No. 16-cr-100—*and* the case number for his §2255 petition—Case No. 19-cv-752—on the front page of the motion. Id. at 1. The motion is titled "Motion Requesting Copies of the CJA 20 Vouchers," and it asserts that the defendant needs unidentified CJA vouchers to prove that the attorneys who acted as his standby counsel in Case No. 15-cr-115 were not appointed by the court to act as his standby counsel in this case.

The court received the second document on June 14, 2021—four months after the court issued the above-described order. Dkt. No. 94. Again, the defendant put both the case number for this *closed* criminal case—Case No. 16-cr-100—*and* the case number for his §2255 petition—Case No. 19-cv-752—on the front page of the motion. Id. at 1. The motion is titled "Post-Conviction

3

Request for Grand Jury Transcripts," and it repeats allegations he made in some of his pre-February 2021 letters and motions regarding what he believes to have been the invalidity of the indictment.

Finally, on November 22, 2021—nine months after the court's February 2021 order—the court received a letter from the defendant. Dkt. No. 95. The letter asks this court to "support its claim" that the defendant was represented by standby counsel in Case No. 16-cr-100, insisting that he never wanted to represent himself in Case No. 16-cr-100 and demanding that the court "support its claim" that he was represented by standby counsel and that he wanted that representation to be limited. Id.

The court will deny the May 2021 motion for CJA vouchers and the June 2021 motion for grand jury transcripts. As the court indicated in its February 2021 order, the defendant should not have put the case number for this *closed* criminal case on these motions. The law gives a defendant in a criminal case two post-conviction opportunities to attack his conviction and sentence—direct appeal and collateral attack through a §2255 motion. The defendant could have raised both issues he discusses in these motions in his appeal or his §2255 petition. He did not. There is no relief the court can give him—even if his claims were entitled to relief—in a criminal case that has been closed for just short of five years.

The court hopes that the defendant is not deliberately defying a federal court order. Perhaps, in putting both Case No. 16-cr-100 and 19-cv-752 on the front page of these two motions, the defendant was attempting to make clear

4

that the §2255 petition filed in Case No. 19-cv-752 related to the conviction in Case No. 16-cr-100. If that is what the defendant was trying to do, the court should have made more clear in its February 2021 order that not only is it not necessary to put the underlying criminal case number on motions filed in a §2255 case, but it is problematic to do so. When the clerk's office receives a motion that shows multiple case numbers in the caption of the motion, it must docket that motion in every case listed in the caption.

The court will be more direct in this order: The defendant must *stop* filing motions that bear Case No. 16-cr-100 in their caption. Case No. 16-cr-100 has been closed for years. There is no open Case No. 16-cr-100. The court will not grant motions filed in Case No. 16-cr-100 because, as it indicated in its February 2021 order, it does not have jurisdiction to entertain attacks on the defendant's conviction in this closed criminal case. If the defendant continues to file motions and other documents that have Case No. 16-cr-100 in the caption, the court will consider whether to impose sanctions on the defendant for violating a court order.

As for the defendant's November 2021 letter asking the court to "support its claim" that he was represented by standby counsel in Case No. 16-cr-100, the court assumes that, despite the disrespectful tone of this letter, the defendant means to ask the court for clarification on statements it made in a decision he cites in the letter. The court's statements were made in a different case—19-cv-1319—so again, the defendant should not have filed the letter in this *closed* criminal case. A motion seeking clarification of an order issued in

5

Case No. 19-cv-1319 should have been filed in Case No. 19-cv-1319 and should have been filed as a motion (which is a request by a litigant for a court to take some action), not as a letter.

That said, the defendant has raised this issue in numerous pleadings across several cases, so the court will attempt to provide the defendant with the clarification he requests, understanding that he believes the court to have misstated the facts and that that misstatement could prejudice him in some future hearing.

The defendant references an order in Case No. 19-cv-1319, which he says was dated October 8, 2019. Dkt. No. 95 at 1. There is no order October 8, 2019 order in Case No. 19-cv-1319. The defendant attached to his letter parts of the court's October *2*, 2019 Order Granting in Part Government's Motion for Temporary Restraining Order (Dkt. No. 2) and Setting Date for Hearing on Request for Protective Order. United States v. Dyer, Case No. 19-cv-1319, Dkt. No. 12. The defendant asserts that the court made two "untruthful" statements in the order: that he was represented by standby counsel in Case No. 16-cr-100 but that he wanted that representation to be very limited, and that the defendant had told one of his standby attorneys that he wanted that attorney to withdraw and that he wanted to represent himself. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 95 at 1. The court will explain why it made those statements.

In response to the government's request for a temporary restraining order in Case No. 19-cv-1319, the defendant argued (among other things) that

6

while he had waived his right to counsel in Case Nos. 15-cr-115 and 16-cr-100 early on, he had abandoned and revoked that waiver in Case No. 15-cr-127. Id. at Dkt. No. 10.

The court addressed that argument in a footnote in its October 2, 2019 decision:

> The defendant has filed a response to the government's request, arguing among other things that he was denied his right to counsel. Dkt. No. 10. On July 10, 2015, Attorney Troy Owens of Owens & Laughlin in Lake in the Hills, Illinois filed a notice of appearance on the defendant's behalf. United States v. Dyer, Case No. 15-cr-115, dkt. no. 17. Owens represented the defendant at the arraignment and plea, id., dkt. no 23, and continued to represent him until Owens filed a motion to withdraw on August 31, 2015, id., dkt. no. 35. The motion indicated that the defendant and Owens had suffered a breakdown in the attorney/client relationship. Id., Dkt. No. 35. Magistrate Judge William E. Duffin granted the motion, conditioned upon successor counsel filing a notice of appearance. Id., Dkt. No. 38. At a hearing on September 14, 2015, the defendant reported that he'd met with a lawyer but hadn't yet retained him; Magistrate Judge Nancy Joseph held the proceedings in abeyance and set a status conference for September 29, 2015. Id., Dkt. No. 40. At the September 29, 2015 hearing, however, the defendant reported that he'd talked to several attorneys and that none had agreed to represent him. Id., Dkt. No. 42. He asked the court to allow him to represent himself, and indicated that he wanted to file a number of motions, including a response to Attorney Owens' motion to withdraw. Id. Judge Joseph ordered that by October 2, 2015, the defendant needed to file a motion asking to represent himself. Id. The defendant filed that motion on October 5, 2015. Id., Dkt. No. 46. The motion said that the defendant "elects to represent himself." Id. Magistrate Judge Jones granted the motion, noting that the defendant was a certified paralegal (although he hadn't practiced as one), that he had had a prior criminal case and had read criminal law books, and that the defendant had no "physical or mental impairments." Id., Dkt. No. 48. The defendant advised Judge Jones that he was aware of the Federal Rules of Criminal Procedure, the Sentencing Guidelines, the Federal Rules of Evidence and the local rules of this court, that he had access to the rules on line and that he understood the charges. Id. at 1. The defendant also told Judge Jones that no one knew the facts of the case like he did and that he wasn't comfortable with an attorney handling his case. Id. Judge

7

Case 2:16-cr-00100-PP    Filed 01/31/22    Page 7 of 14    Document 96

Jones told the defendant that it was a "special burden" to represent oneself at trial, that the defendant had to waive his right to counsel voluntarily and that the defendant would be required to comply with all the rules of the court. Id. at 2. Judge Jones ended up granting the defendant's motion to represent himself, but appointed standby counsel. Id. The hearing lasted thirty-six minutes. Id. at 1. On October 21, 2015, the court appointed Attorney Robert G. LeBell as standby counsel. Id., Dkt. No. 53. The defendant ended up asking the court to allow LeBell to represent him. Id., Dkt. No. 58. Judge Jones asked for a recommendation from Federal Defender Services about whether LeBell should be appointed, or whether the defendant would have to retain him. Id. On December 17, 2015, the defendant filed a motion asking permission to liquidate assets to pay counsel. Id., Dkt. No. 62. That same day, Judge Jones appointed LeBell to represent the defendant. Id., Dkt. No. 63. On May 18, 2016, Attorney LeBell moved to withdraw as counsel. Id., Dkt. No. 86. Attorney Lebell, like Attorney Owens, cited a breakdown in the attorney/client relationship. Id., Dkt. No. 86-1. Judge Jones held a hearing on the motion, id., dkt. no. 87, and granted the motion to withdraw on May 31, 2016. On June 10, 2016, the court appointed Attorney Patrick Cafferty as standby counsel. Id., Dkt. No. 91. On July 14, 2016, Attorney Cafferty moved to withdraw as standby counsel. Id., Dkt. No. 108. ***Cafferty indicated that on July 13, 2016, the defendant had contacted him and asked him to withdraw, saying that the defendant wanted to represent himself without the assistance of standby counsel. Id., Dkt. No. 108-1.*** Judge Jones held a hearing on this motion, id., dkt. no. 110, and granted the motion on August 3, 2016. On November 3, 2016, ahead of the trial scheduled for December 5, 2016, the government wrote to the trial judge noting that the defendant was representing himself, without standby counsel. Id., Dkt. No. 156. The government suggested that it "may be in the interest of the Court and the parties (and certainly [the defendant]), for [the defendant] to have standby counsel during the trial—someone with whom [the defendant] can consult during trial for assistance in framing questions, introducing exhibits, etc." Id. While the government acknowledged that the defendant "may be reluctant to take advice from counsel," noting that three attorneys already had been appointed and then had withdrawn, it reminded the court that it had the inherent authority to appoint standby counsel for someone who refused representation. Id. Judge Jones held a hearing on November 10, 2016, at which point the defendant said he had no objection to the court appointing standby counsel. Id., Dkt. No. 158. Judge Jones recommended that the defendant talk to Federal Defender Services. Id. Four days later, on November 14, 2016, Judge Jones issued a text-only order in which he ordered the appointment of standby counsel for the final

8

pretrial conference and at trial, on the condition that counsel was limited to helping the defendant with presenting and admitting, or making objections to, evidence. Judge Jones made clear that standby counsel was not to argue motions or objections, seek to admit or object to evidence, question witnesses or draft motions or arguments, and that under no circumstances would standby counsel convert to lead counsel. Judge Jones said, "[The defendant] has waived his right to counsel and has chosen to represent himself in this matter. His decision will be respected. It will also be enforced. Standby counsel shall only serve in the standby role and no other." On November 15, 2016, Attorney Christopher Donovan filed a notice of appearance as standby counsel. Id., Dkt. No. 161. The same day, Attorney Donovan's law partner, Martin Pruhs, also filed a notice of appearance as standby counsel. Id., Dkt. No. 163. The jury trial began on December 5, 2016, id., dkt. no. 201; on December 7, 2016, an executed plea agreement was filed, signed by the defendant and by standby counsel Pruhs, id., dkt. no. 198.

United States v. Dyer, Case No. 19-cv-1319, Dkt. No. 12 at 4, n.1 (emphasis added to the language the defendant alleges is "untruthful").

At the end of the order, the court stated:

> Below, the court has scheduled the hearing for the protective order for Friday, October 11, 2019 at 9:00 a.m. Because the defendant is in custody, the court will arrange with his institution to have him appear by telephone. ***As the court has discussed in the footnotes above, it is aware that in the underlying criminal cases, the defendant elected to represent himself and, while he had standby counsel, wanted that counsel's participation to be very limited.*** The court will contact the Federal Defender to arrange to have standby counsel available for the October 11, 2019 hearing, on whatever terms the defendant chooses. The court will notify the defendant of the identity of standby counsel prior to the hearing date, so that he may communicate with counsel if he wishes.

Id. at 25 (emphasis added to the language the defendant alleges is "untruthful").

The letter the defendant has filed, demanding that this court "support" its "claims," says that the opinion referenced above "stated incorrectly that, [the defendant] told attorney Cafferty that, [the defendant] wanted to represent

9

[him]self without the assistance of counsel," and the letter quotes the language of the extended footnote that references that fact. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 95 at 1. The court obtained that information from an affidavit that Attorney Cafferty filed on July 14, 2016 in Case No. 15-cr-115. United States v. Dyer, Case No. 15-cr-115-JPS, Dkt. No. 108-1. Attorney Cafferty averred, in a notarized statement, that "[o]n July 13, 2016, Mr. Dyer contacted me and requested that I withdraw from this matter as he wishes to represent himself without the assistance of stand-by counsel. Therefore, I ask that I be permitted to withdraw as stand-by counsel and be relieved of my duties." Id. The court did not make up this information; this is what Attorney Cafferty stated in his sworn affidavit to Judge Stadtmueller.

In the letter the court received in this case in November 2021, the defendant states, "I did not tell attorney Cafferty that I wanted to proceed without standby counsel." United States v. Dyer, Case No. 16-cr-100, Dkt. No. 95 at 1. He asserts that under Wisconsin Supreme Court Rule 20:8.4(c), it constitutes professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation, implying that Attorney Cafferty lied under oath. Id. He states:

> Magistrate Jones appointed Patrick Cafferty to act as my standby counsel in the 115Farmland and 137DennisE cases following attorney Lebell's withdrawal. I informed the Court that I would likely allow attorney Cafferty to ascend from my standby counsel to appointed counsel in a June 29, 2016 status hearing. (115Farmland, Dkt. No. 96)(Exhibit #8). That is not an unequivocal waiver of counsel, nor did one exist at that time. During the status hearing, it was revealed to the Court that, the 87,000 emails disseminated to me in discovery in May [illegible] 2016, nearly a year

after my June 2015 indictment in the 115Farmland case, were still not in a readable format.

An additional factor which complicated matters was the fact that attorney Lebell, following his departure, and attorney Cafferty's appointment as standby counsel, sent all of the 115Farmland and 137DennisE boxes of case evidence to Cafferty's office leaving me no access to my own evidence.

Cafferty also filed a motion to adjourn behind my back, even though he was only standby counsel. When I confronted him about the filing, he denied it.

Given these facts, I expressed the very real concern that if I were to allow attorney Cafferty to become appointed counsel, he would not be prepared for a December 2016 trial given the complex, voluminous nature of the 115Farmland case. (114Farmland, Dkt. No. 96)(Exhibit #8). Attorney Cafferty and I both requested a trial date after the first of the year (January 2017). Judge Stadtmueller repeatedly denied those requests without building a logic bridge between his decisions and the facts, as he often did prohibiting appeal review. (15-CR-114-JPS, Dkt. No.s 97, 106 and 125).

\* \* \* \*

Knowing attorney Cafferty could not be prepared in a few months, I chose the lesser of two evils, I bowed to the inevitable, Hobson's choice, and proceeded pro se reluctantly until Christopher Donovan ("Donovan") and Martin Pruhs ("Pruhs") were appointed my standby counsel November 14, 2016.

Id. at 2-3.

The defendant's assertion that this court was "untruthful" when it stated that Attorney Cafferty had asked to withdraw and had indicated that the defendant wanted to represent himself is belied by the defendant's own assertions. The defendant may have had his reasons for asking Attorney Cafferty to withdraw. He may have had his disagreements with what Attorney Cafferty did or did not do. And only the defendant and Attorney Cafferty know what was said between them. But Attorney Cafferty filed an affidavit, which he

11

signed under oath, in which he said that the defendant told Attorney Cafferty that the defendant asked him to withdraw and that the defendant wanted to proceed without standby counsel. The court recounted that sworn statement in its order. The court was not "untruthful."

The defendant also asserts in his letter that the court's "claim" that the defendant wanted standby counsel's representation to be "very limited" was erroneous. Id. at 1. He also asserts that "[c]ontrary to the Court's claim that, [the defendant] wanted to represent [him]self, the record reflects the fact that [he] wanted to be represented by competent counsel." Id.

The court's statement that it was "aware" that the defendant had elected to represent himself and that while he had standby counsel, he wanted that counsel's role to be limited, came from several sources. It came from the minutes of the July 13, 2016 arraignment and plea before Judge Jones in Case No. 16-cr-100, which reflected that the defendant was "proceeding pro se in his other cases and would request to proceed Pro Se in this matter as well." Dkt. No. 6 at 1. It came from the fact that after that hearing, the defendant did not file a motion asking for the appointment of counsel in Case No. 16-cr-100, nor did he notify the court that he wished for counsel to be appointed or that he was trying to retain counsel. It came from the fact that between the date Judge Jones allowed Attorney Cafferty to withdraw as standby counsel in Case No. 15-cr-115 (August 3, 2016) and the date the government suggested that the court consider appointing the defendant standby counsel at trial (November 3, 2016), the defendant filed motions on his own behalf, but none of them

12

requested appointment of counsel or mentioned any intention to retain counsel. It came from Judge Jones's November 14, 2016 text-only order in Case No. 15-cr-115, stating—emphatically—that the defendant had elected to represent himself and that standby counsel's role was to be limited. <u>United States v. Dyer</u>, Case No. 15-cr-115, November 14, 2016 text-only order.

The defendant's letter goes into detail about his communications with the various attorneys who represented him during the pendency of his three criminal cases, and asserts that the court should have been able to tell from a review of the dockets in all of the cases that he did not want to represent himself. <u>United States v. Dyer</u>, Case No. 16-cr-100, Dkt. No. 95 at 1-2. These arguments assume that the court is a mind-reader and that it was privy to conversations it had no knowledge of. The court's "awareness" came from its review of the docket entries it has described above. The court's statement of its "awareness" was not "untruthful." The defendant disagrees that he wanted to represent himself; that is his prerogative. But that does not mean that the court's statement in its order in Case No. 19-cv-1913 was "untruthful."

If the defendant believed that he was being denied his Sixth Amendment right to counsel during any of the criminal cases, he could have filed written motions or made oral motions asking for counsel to be appointed. If he believed that he was denied his Sixth Amendment right to counsel in Case No. 15-cr-115 or Case No. 16-cr-100, he could have made that argument on appeal, or in his §2255 motions. Filing a letter in a closed criminal case demanding that the court "support" its "claims" and asserting that the court made "untruthful"

13

statements in an order—implying that the court deliberately lied—is not the appropriate way for the defendant to raise his Sixth Amendment concerns. The court will not respond to any future demands of this sort.

The court **DENIES** the motion requesting copies of the CJA 20 vouchers. Dkt. No. 93.

The court **DENIES** the post-conviction request for grand jury transcripts. Dkt. No. 94.

The court **ORDERS** that the defendant is **BARRED** from filing any further documents in this **CLOSED** criminal case. The court **ORDERS** that the defendant is **BARRED** from filing any documents that have Case No. 16-cr-100 in the caption. If the defendant files any further documents in this **CLOSED** criminal case, or files any further documents with Case No. 16-cr-100 in the caption, he may be subject to sanctions, including possible financial sanctions and a possible bar on filing further documents in any cases pending before this court.

Dated in Milwaukee, Wisconsin this 31st day of January, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**